1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  JAMES MICHAEL DENSMORE,                      CASE NO. C15-0572JLR

11                          Petitioner,           ORDER ON SECOND REPORT AND
                                                  RECOMMENDATION
12          v.

13  PATRICK R. GLEBE,

14                          Respondent.

15                                  **I.      INTRODUCTION**

16          Petitioner James Michael Densmore is a state prisoner confined at Stafford Creek

17  Corrections Center in Aberdeen, Washington who filed a petition under 28 U.S.C. § 2254

18  seeking relief from a 2010 Snohomish County burglary conviction.  (Petition (Dkt. # 4.)  Of the

19  four grounds he raises for relief, the court denied three as procedurally defaulted, but ordered

20  supplemental briefing on the fourth ground.  (6/30/16 Ord. (Dkt. # 29).)  Besides his

21  supplemental briefing (Supp. Mem. (Dkt # 35); *see also* Supp. Rec. (Dkt. ## 31, 38)), Mr.

22  Densmore also submitted a "Motion to Issue Finding and Conclusion Pursuant to Rule 52(a)(5)"

23  (Mot. (Dkt. # 32)).

24

1       Upon review of the parties' briefing, the relevant portions of the record, Chief United

2 States Magistrate Judge James P. Donohue 's Second Report and Recommendation (2d R&R

3 (Dkt. # 39)), the parties' objections to the Second Report and Recommendation (Glebe Obj.

4 (Dkt. # 40); Densmore Obj. (Dkt. # 41)), and the applicable law, the court rules as follows:  (1)

5 the court DENIES Mr. Densmore's motion for findings of facts and conclusions of law under

6 Fed. R. Civ. P. 52(a)(5); (2) the court ADPOTS in part and REJECTS in part the Second Report

7 and Recommendation, (3) the court DENIES the remaining ground in Mr. Densmore's habeas

8 corpus petition (Ground 1(b)) without an evidentiary hearing; (4) the court DENIES a certificate

9 of appealability as to Ground 1(b); and (5) the court DISMISSES this matter with prejudice.

10                              **II.   <u>BACKGROUND</u>**

11       The facts of the crime and the testimony of the chief witnesses are adequately laid out in

12 the "Factual History" section of the Report and Recommendation (*id.* at 2) and will not be

13 repeated here.  The relevant facts for purposes of this order concern: (1) a surveillance video

14 recorded at the burgled business which captured images of a man wearing a light-colored

15 garment climbing over an office wall in the building, (2) the confession of one of Mr.

16 Densmore's co-defendants (Byron Bowman) who admitted to burglarizing the business and, in

17 the process of that burglary, climbing over the office wall and (3) the testimony of the State's

18 main witness (Andrea Huntley) that (a) Mr. Densmore was wearing a light-colored sweatshirt

19 when she picked him up on the morning of the burglary and (b)  one of the people in the

20 surveillance video was Mr. Densmore.

21       At Mr. Densmore's trial, the prosecuting attorney stated in closing argument: "In fact,

22 from the video you know that [Mr. Densmore]'s the one who went up and over the wall."

23 (Petitionat 7.)  Prior to that time, Mr. Bowman had already confessed to the burglary (including

24

1 an admission that he had climbed over the office wall and cut the office safe open with a grinder)

2 but  had refused to name his accomplices.  (State Ct. Rec. (Dkt. # 20) Ex. 10, No. 2.)

3 **III.     ANALYSIS**

4 **A.  Mr. Densmore's Rule 52(a)(5) Motion**

5 Federal Rule of Civil Procedure 52(a)(5) concerns an action tried on the facts to the court

6 (i.e., without a jury) and states that "[a] party may later question the sufficiency of the evidence

7 supporting the findings, whether or not the party requested findings, objected to them, moved to

8 amend them or moved for partial findings."  Fed. R. Civ. P. 52(a)(5). Although the rule may be

9 applied to a habeas proceeding, *see Browder v. Director, Dept. of Corrections of Ill.*, 434 U.S.

10 257, 270-71 (1978), it does not apply to a habeas proceeding where the court did not hold a Rule

11 52 hearing and did not enter findings of fact or conclusions of law.  *See Harrison v. Milligan*,

12 C09-4665 IS, 2012 WL 1835428, at *1 n.1 (N.D. Cal. May 21, 2012); *Graves v. Martel*, 06-CV-

13 884-JKS, 2010 WL 1728919, at *1 n.1 (E.D. Cal. Apr. 27, 2010).

14 Such is the case here.  Rule 52(a)(5) is inapplicable in the absence of any hearing or the

15 entry of any findings or conclusions.  Accordingly, the court denies Mr. Densmore's motion.

16 **B.  Mr. Densmore's Remaining Ground for Section 2254 Relief**

17 This court is limited in its review of any habeas claim previously adjudicated on the

18 merits in state court.  *See* 28 U.S.C. § 2254(d).  Specifically, the court may not grant a habeas

19 petition with respect to any claim that was adjudicated on the merits in state court unless (1) the

20 state court's decision was contrary to, or involved an unreasonable application of, clearly

21 established federal law as determined by the Supreme Court; or (2) the state court's decision

22 reflects an unreasonable determination of the facts considering the evidence presented.  *Id.*

23

24

1    The "clearly established law" upon which Mr. Desmorerelies for his argument that he is

2    entitled to habeas relief is *Napue v. Illinois*, 360 U.S. 264, 269 (1959), wherein the Supreme

3    Court declared that "a conviction obtained through the use of false evidence, known to be such

4    by representatives of the State must fail under the Fourteenth Amendment." *Id.*  In other words,

5    "a criminal defendant is denied due process of law when a prosecutor either knowingly presents

6    false evidence or fails to correct the record to reflect the true facts when unsolicited false

7    evidence is introduced at trial." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).

8    Mr. Densmore's position is that the introduction of the surveillance video, coupled with

9    the prosecutor's closing argument that the jury "knew," based on the video, that Mr. Desmore

10   was the man going over the wall in the burgled business, constitutes the use of false evidence to

11   obtain a conviction and thus is a violation of his Fourteenth Amendment rights.  (Supp. Mem. at

12   2-4.)  Mr. Densmore's logic can be summarized as follows:  The police had already obtained the

13   confession of Mr. Bowman that Mr. Bowman had entered the business, climbed over the wall

14   and stolen the contents of the office safe.  (*Id.* at 3.)  Knowing this[1], the prosecution then

15   obtained a second conviction on the same evidence by claiming that Mr. Densmore was the man

16   in the surveillance video climbing over the office wall.  (*Id.*)

17   There are several flaws in Mr. Densmore's argument.  First, Mr. Densmore's argument is

18   premised on the understanding that there was only one person in the video (who, therefore, could

19   not have been both Mr. Bowman and Mr. Densmore).  The record on which the state court relied

20   does not support that premise.  Although the video itself was not included among the evidence of

21   the state court record filed in conjunction with this petition (*see* Dkt. ## 20, 38), there is

22   _____

23        [1] The police officer who obtained Mr. Bowman's confession was, according to Mr. Densmore, seated next
     to the prosecutor at his trial.

24

1   testimony in the transcript of the trial indicating there was more than one person on the

2   surveillance camera videotape.[2]  The testimony of chief State witness Andrea Huntley on cross-

3   examination by Mr. Desmore's counsel is as follows:

> Q.  You just talked about viewing the photographs.  When you viewed the photographs that were the stills from the surveillance camera, that was March 26th; right?
> A.  Yes.
>
> * * *
>
> Q.  So when you saw the pictures, you were able to look at those photographs and say, That's what he was wearing when I picked him up?
> A.  Yeah.  Yeah.
> Q.  In the photographs, you can't see the people's faces; is that correct?
> A.  Yeah.  Yes.
> Q.  They've got masks on?
> A.  Yes.
> Q.  They've got hoodies on?
> A.  Yes.
> Q.  But you can look at the clothing and identify that?
> A.  Yes.
> Q.  And you were able to say specifically that one of those individuals was Byron Bowman and one of those individuals was James Densmore; is that correct?
> A.  Yes.

15   (Supp. Rec., Ex. 18 at 105:6-9, 105:19-106:10.)

16          There is no reasonable way to interpret Ms. Huntley's testimony other than to conclude

17   that the surveillance video featured footage of multiple individuals, one of whom Ms. Huntley

18   identified as Mr. Desmore and another of whom she identified as Mr. Bowman.  Therefore, the

19   prosecutor was not "double dipping" when he obtained a conviction of Mr. Bowman based on

20   his confession that he had committed the burglary (and was shown on the surveillance video) and

21   then represented to the jury (on the basis of Ms. Huntley's testimony) that another one of the

---

23          [2] From the testimony of investigating officer Detective Lambier:  "I was made aware… before I left [the scene of the burglary] – that there was a video, the video had been working; and then a quick review that was done there showed that there was video of three subjects in the store that night."  (Supp. Rec. , Ex. 15 at 44:12-16.)

1   men in the surveillance video was Mr. Densmore himself.  It would be unreasonable to conclude

2   from this record that the prosecutor knowingly used false evidence to obtain Mr. Densmore's

3   conviction.

4          Second, there was evidence, based on the testimony of Ms. Huntley, to indicate that Mr.

5   Densmore was one of the men in the video.  Ms. Huntley testified that Mr. Densmorewas

6   wearing a light-colored sweatshirt when she picked him up after the burglary had occurred, and

7   she identified him as one of the men in the video.  Furthermore, there was other evidence

8   connecting Mr. Densmore to the burglary, including phone records corroborating Ms. Huntley's

9   testimony that Mr. Densmore called her and requested to be picked up after the burglary, and the

10  testimony of Ms. Huntley and another individual, Kale Cooper, that shortly after the burglary

11  occurred, Mr. Bowman and Mr. Densmore dumped a bag of money out at Mr. Cooper and Ms.

12  Huntley's house and divided the contents of the bag between them.  (*See* Supp. Mem. at 2.)

13         Finally, Mr. Densmore's reliance on the prosecutor's closing argument as proof of using

14  "false evidence" against him is undercut by the fact that the record before the state court

15  indicated clearly that "[t]he jury has been instructed on closing arguments."  (State Cr. Rec., Ex.

16  B to Ex. 11 (transcript of Plaintiff's Final Closing Argument, State of Washington v. James

17  Michael Densmore, No.09-1-00812-9,  at  8).)  That instruction includes the following

18  admonition:

19             The lawyers will make closing arguments… The lawyers' remarks, statements,
              and arguments are intended to help you understand the evidence and apply the
20             law.  However, the lawyers' statements are not evidence or the law.  The evidence
              is the testimony and the exhibits.  The law is contained in my instructions to you.
21             You must disregard anything the lawyers say that is at odds with the evidence or
              the law in my instructions.
22

23  Washington Pattern Jury Instructions – Criminal (3d ed.), WPIC 1.01.  Whatever the prosecutor

24  said regarding Mr. Densmore's presence on the surveillance video was not evidence (false or

1  otherwise) and will not suffice to support Mr. Densmore's claim that he was convicted on the

2  base of false evidence.  The jury had seen the surveillance video footage, heard the testimony of

3  Ms. Huntley, Mr. Cooper and the investigating officers, and had been instructed to apply the law

4  as given by the trial judge to the evidence presented to them.  The jury was free to decide

5  whether Mr. Densmore was one of the men in the surveillance video; the prosecutor's

6  representation that it was Mr. Densmore was not evidence of that fact, nor did it constitute the

7  use of false evidence to obtain Mr. Densmore's conviction.  For the reasons stated above, Mr.

8  Densmore is not entitled to relief on this ground and the court DENIES his petition on that basis.

9  **C.  Certificate of Appealability**

10      A certificate of appealability issues only where a petitioner has made "a substantial

11  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  This standard  is

12  satisfied by a petitioner who demonstrates "that jurists of reason could disagree with the district

13  court's resolution of his constitutional claims or that jurists could conclude the issues presented

14  are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322,

15  327 (2003).

16      In his Second Report and Recommendation, the Chief Magistrate Judge observed that "it

17  appears the Commissioner [of the Washington State Supreme Court] incorrectly – and possibly

18  unreasonably – determined that Mr. Bowman did not identify himself as the man in the light-

19  colored garment…" (2d R&R at 7.)  This court believes this finding contributed to the

20  conclusion in the Second Report and Recommendation that "Mr. Bowman's confession

21  contradicts Ms. Huntley's testimony," and led the Chief Magistrate Judge to recommend that the

22  court grant a certificate of appealability.  (*Id.* at 8.)

23

24

1    The court does not agree with this line of reasoning.  Although Mr. Bowman

2  unquestionably identified himself as a participant in the burglary, the record is devoid of any

3  evidence that he   identified himself (out of the three men shown in the video) as the man in the

4  light-colored garment.  Thus, the court concludes that the Washington Supreme Court

5  Commissioner's observation was correct.  As explained above, Mr. Bowman's confession that he

6  participated in the burglary does not contradict Ms. Huntley's testimony that Mr. Densmore was

7  one of the men captured on the surveillance video.

8    In light of these conclusions, it is the finding of this court that reasonable jurists could not

9  disagree on the resolution of Mr. Densmore's constitutional claims, nor conclude that Mr.

10  Densmore has presented constitutional issues that "deserve encouragement to proceed further."

11  *See Miller-El*, 537 U.S. at 327.  The court, therefore, DENIES Mr. Densmore's request for a

12  certificate of appealability.

13                              **IV.    CONCLUSION**

14    Upon further review, the court concludes that Mr. Densmore has failed to establish that

15  the prosecutor's comments in closing argument concerning the contents of the surveillance video

16  constituted the use of "false evidence" to obtain Mr. Densmore's conviction.  The state court's

17  decision upholding that conviction was not contrary to clearly established federal law nor the

18  result of an unreasonable determination of the facts in light of the evidence presented.  Mr.

19  Densmore is not entitled to relief on any of the grounds articulated in his habeas petition, nor is

20  he entitled to a certificate of appealability in the further pursuit of his appeal.  Further, the court

21  denies Mr. Densmore's motion to issue findings and conclusions (Dkt. # 32).  In sum, the court

22  ADOPTS in part and REJECTS in part the Second Report and Recommendation (Dkt. # 39) and

23  DISMISSES this matter with prejudice.

24

1     The clerk is DIRECTED to provide copies of this order to all counsel and to Chief

2  Magistrate Judge Donohue.

3     Dated this 25th day of October, 2016.

4

5     _____

6     JAMES L. ROBART
      United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON SECOND REPORT AND
RECOMMENDATION- 9